UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL H., | ) |
| Plaintiff, | ) No. 22-cv-2446 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael H.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Defendant's motion for summary judgment [dkt. 18] is GRANTED; Plaintiff's motion for summary judgment [dkt. 13] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**1. Background**

**1.1. Procedural History**

On December 19, 2015, Plaintiff protectively filed for Disability Insurance Benefits, alleging a disability onset date of April 21, 2015. [Administrative Record ("R.") 112.] After an administrative hearing, Administrative Law Judge ("ALJ") Edward P. Studzinski issued a June 11, 2018 decision denying Plaintiff benefits. [R. 112-28.] On October 22, 2019, the Appeals Council ("AC") entered an order vacating the ALJ's June 11, 2018 decision, with directions to resolve specific issues going

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] The Court construes both Defendant' Response to Plaintiff's Motion for Summary Judgment [dkt 18] and Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [dkt. 13] as motions for summary judgment. Additionally, in the future, Plaintiff's counsel is cautioned to more carefully adhere to Local Rule 5.2(e) as well as this Court's standing orders on margin size, which were violated in Plaintiff's opening brief.

forward. [R. 135-36.] The AC also remanded the case to a new ALJ for procedural reasons having nothing to do with the actual disability determination. [R. 136.] A new ALJ was assigned and a new administrative hearing was held. [*See* R. 1507.] On April 29, 2020, the new ALJ, Joel G. Fina, issued the second unfavorable decision in Plaintiff's case. [R. 1507-28.] Plaintiff filed suit to challenge that decision (NDIL Case No. 20-cv-7201). During the pendency of that suit, it was determined that the oral testimony from the second hearing was not completely recorded. [R. 1448.] Thus, the Commissioner ultimately sought an Agreed Remand of the ALJ's April 29, 2020 decision, pursuant to sentence six of 42 U.S.C § 405(g). [R. 1548-50.] That sentence six remand was granted on June 8, 2021, meaning that the merits of the ALJ's April 29, 2020 decision were never considered. [R. 1547.] Accordingly, on August 18, 2021, the AC ordered a new hearing. [R. 1553-54.] A new hearing was held, after which ALJ Fina issued the third unfavorable decision, dated on January 14, 2022, in Plaintiff's case. [R. 1448-67.] On May 9, 2022, Plaintiff again filed suit to challenge this latest decision. [Dkt. 1.] On April 21, 2023, the case was reassigned to Judge Cox pursuant to Local Rule 40.3(c) because Judge Cox had entered the Agreed Remand in Plaintiff's earlier case. [Dkt. 25.] The ALJ's January 14, 2022 is the decision now before the Court.

### 1.2. The ALJ's Decision

At Step One of the ALJ's January 14, 2022 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 21, 2015. [R. 1450.] At Step Two, the ALJ found that Plaintiff had the severe impairments of: degenerative disc disease of the lumbar and cervical spine; headaches, s/p traumatic brain injury; obesity; post-traumatic stress disorder; depression; and anxiety. [*Id.*] The ALJ also determines that Plaintiff had the non-severe impairment of non-prescription cannabis abuse. [R. 1451.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 1451-54.]

2

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions: lift up to ten pounds occasionally, less than ten pounds frequently, stand or walk up to two hours per eight hour work day, and sit for up to 8 hours per 8 hour workday, with normal breaks; only occasional use of foot controls bilaterally; no kneeling, crawling, climbing ladders, ropes or scaffolds; occasionally climbing of ramps or stairs, balancing, stooping, and crouching; frequent reaching, handling objects (gross manipulation) and fingering (fine manipulations); no concentrated exposure to strobing or flashing lights, loud noise; dangerous moving machinery; no exposure to unprotected heights; work limited to simple and routine tasks performed at a variable rate (*i.e.*, no mechanically set pace or assembly line work) with no strict hourly rate production requirements; no tandem tasks; and no interaction with the public in the work setting.[3] [R. 1454, 1466.] At Step Four, the ALJ determined Plaintiff was unable to perform any of his past relevant work, but that other jobs existed in significant numbers in the national economy Plaintiff could perform. [R. 1465-66.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 1467.]

**2.    Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R.

---

[3]    While the ALJ did not identify the exertional level at the outset of his RFC determination, this appears to be a typographical oversight, because the sedentary level is identified later in the opinion at R. 1466. However, the Court is bothered that this error occurs in all three decisions in Plaintiff's case, including the first one authored by a different ALJ. This issue was not raised by Plaintiff and is therefore waived. *See Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020), *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016).

3

§ 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over, and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. Under the substantial evidence standard, the court neither reweighs the record nor second-guesses the ALJ's judgment. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Further, while reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve

4

conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001.

**3.      Discussion**

Plaintiff alleges the ALJ erred in three ways in his January 14, 2022 decision: (1) he erred in his RFC assessment; (2) he improperly assessed Plaintiff's subjective symptoms; and (3) he improperly relied on the testimony of the vocational expert ("VE"). The Court disagrees with these contentions, as detailed below.

**3.1.   The ALJ's RFC Assessment was Proper**

First, Plaintiff argues the ALJ neglected to follow the directives of the Appeals Council's remand order. [Dkt. 13, p. 9.] Presumably Plaintiff refers to the AC's October 22, 2019 remand order, although this is not specified. (It would make no sense for Plaintiff to be referring to the AC's August 18, 2021 remand order, as that document simply ordered a new hearing due to recording deficiencies at the second administrative hearing. [R. 1553-54.]) The October 22, 2019 remand order identified deficiencies in the ALJ's rulings as it related to the vocational expert who testified at the first hearing in front of ALJ Studzinski. [R. 135-36.] The order required the new ALJ, upon remand, to obtain supplemental VE evidence. [R. 136.] That order did not, as Plaintiff implies, require the new ALJ to change Plaintiff's RFC, although that was certainly within the purview of the ALJ. ALJ Fina did, in fact, obtain additional evidence and VE testimony, and did so *twice* because the recording of the second administrative hearing failed, so a third hearing was held. Ultimately, ALJ Fina satisfied the directives of both AC orders in this case in that he (a) obtained additional evidence from a VE and (b) that he ensured a complete transcript of the administrative hearing was available.

Plaintiff fully acknowledges that the ALJ made no error in his Step Three determination that Plaintiff did not meet or equal listing level severity. [Dkt. 13, p. 9.] Plaintiff takes issue, however, with the mental RFC stemming from the ALJ's Step Three analysis, alleging that the ALJ relied upon "false

5

equivalencies to cancel out significant deficits." [*Id.*] Thus, any argument there was a Step Three error has been waived, *see Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020), *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016), but the Court will address the ALJ's mental RFC evaluation.

The ALJ weighed the record evidence of Plaintiff's functioning in each of the paragraph B domains and concluded that he did not satisfy a mental impairment listing because the evidence overall showed only moderate limitations. [R. 1452-54.] Specifically, in finding a moderate limitation in the domain of interacting with others, the ALJ cited evidence Plaintiff had difficulty getting along with others; exhibited behavioral issues during a neuropsychological evaluation; and reported he did not spend time with others. [R 1452-53.] However, the ALJ also considered that the same neuropsychological evaluation described Plaintiff's social behavior as largely intact; that Plaintiff reported interests including conversation, family activities, and friends during the psychological consultative examination; that providers described Plaintiff as friendly with no problem expressing himself; and that Plaintiff reported no problems interacting with others during prior employment. [R. 1453.] Similarly, in finding a moderate limitation in the domain of concentrating, persisting, or maintaining pace, the ALJ weighed Plaintiff's difficulty with concentration during the consultative exam and his self-reported trouble completing tasks, but also documented that other treatment notes showed logical thought processing, normal perception, and intact or normal concentration, and that Plaintiff remained able to drive, perform multi-step tasks, and denied any significant problems with concentration, focus, or task completion. [*Id.*] As the ALJ's discussion makes clear [*see* R. 1452-54], there were "positive signs and negative signs regarding plaintiff's capabilities" in each domain and "these were conflicts that the ALJ had to resolve." *Shaun R. v. Saul*, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019).

Contrary to Plaintiff's argument, the ALJ did not "suggest" Plaintiff had no limitations or "undermine" his claimed limitations. Rather, the ALJ ultimately found he had moderate limitations in

each functional domain and subsequently included work restrictions in task complexity, routine, pace, production, and social interactions to accommodate Plaintiff. [R. 1454.] It was appropriate for the ALJ to consider record evidence regarding Plaintiff's functioning in the mental domains, and the fact the ALJ "engaged with both sides of the record and weighed the evidence in a different way than plaintiff would have liked" is not grounds for reversal. *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 972 (N.D. Ill. Sept. 17, 2019). In fact, it is the ALJ's role "to weigh the evidence and resolve any conflicts." *Hector M. v. Kijakazi*, 2022 WL 225878, at *6 (N.D. Ill. Jan. 25, 2022).

The ALJ also engaged with the medical opinions of record when crafting the mental RFC. The ALJ generally credited the reviewing psychologists' opinions when assessing the RFC, but he found Plaintiff's activities did not support finding a restriction to tasks involving three or fewer steps. [R. 1464.] Two psychologists, Dr. David Gilliland, Psy.D. and Dr. David Biscardi, Ph.D. reviewed the record for the state disability determination service. [R. 83-89, 98-100, 103-05.] Dr. Gilliland concluded Plaintiff had no significant limitations in understanding and memory or adaptation, but moderate limitations in his ability to carry out detailed instructions on a sustained basis and in social interaction. [R 89.] In functional terms, he concluded Plaintiff remained able to perform semi-skilled tasks in a routine schedule with limited public interaction. [*Id.*] At the reconsideration level, Dr. Biscardi concluded Plaintiff "retains the capacity to understand, remember, carry out, and sustain performance of 1-3 step tasks" and could complete a normal workday, interact with supervisors/coworkers with no public contact, and adapt to changes and stressors associated with simple routine work. [R. 105.] The ALJ gave these psychologists' opinions some weight when assessing plaintiff's mental RFC, except for Dr. Biscardi's opinion regarding task steps because the opinion did not define "step," and Plaintiff's ability to drive showed a capacity for tasks involving more than three steps.[4] [R. 1464.] The

---

[4]  The Court does not find the ALJ equated Plaintiff's ability to drive (or attend to his personal needs) with an ability to engage in full-time work. Rather, the ALJ considered record evidence of Plaintiff's functional abilities when rating his degree of limitation in the listing domains. *See Wasik v. Kijakazi*, 2022 WL 3684634, at *3 (N.D. Ill. Aug. 25, 2022) (ALJ appropriately considered claimant's activities at step three and subsequently accounted for his

7

ALJ's RFC finding is otherwise consistent with the opinions of Drs. Gilliland and Biscardi, except the ALJ included additional restrictions to variable-rate work with no hourly quotas. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (when ALJ's RFC finding is "more limiting" than reviewing psychologists' opinions, this illustrates "reasoned consideration given" to evidence presented by claimant.). Plaintiff does not argue that the ALJ erred in partially relying on the reviewing psychologists' opinions.

On the other hand, Plaintiff does seem to take issue with the ALJ's treatment of the opinion of Plaintiff's physician, Dr. Awais Butt, MD, which the ALJ afforded no weight. The ALJ began his analysis of Dr. Butt's opinion by acknowledging Dr. Butt's longitudinal treatment relationship with Plaintiff. [R. 1462.] The ALJ then detailed how he found Dr. Butt's opinions unsupported and inconsistent with other record evidence in several respects. First, the ALJ noted that Dr. Butt did not identify any objective findings or identify a clinical basis to support his opined limitations, including absenteeism, off-task time, or needing to lie down. [R. 1462-63]; *see* 20 C.F.R. § 404.1527(c)(3) (ALJ may discount opinions unsupported by medical signs or clinical findings). Second, the ALJ found Dr. Butt's opinion of extreme limitations regarding standing, walking, and carrying inconsistent with examination findings that consistently documented normal ambulation with no assistive device, no problems with balance, and full strength in all extremities. [R. 1462]; *see* 20 C.F.R. § 404.1527(c)(4) (ALJ may discount opinions inconsistent with the record). Third, the ALJ contrasted Dr. Butt's opinion that pain would "constantly" interfere with attention and concentration with mental status exams where Plaintiff routinely exhibited intact concentration and attention. [*Id.*] Fourth, the ALJ noted that Dr. Butt's opinions about Plaintiff's ability to work were vocational and outside the scope of his expertise. [R. 1462-63]; *see* 20 C.F.R. § 404.1527(c)(5) and (d) (ALJ may consider source's specialty, and opinions about claimant's ability to work are not medical opinions because this issue is

---

limitations when determining his RFC).

reserved to the Commissioner). Finally, the ALJ found Dr. Butt's extreme opinions inconsistent with record evidence that showed Plaintiff's pain, headaches, and mental symptoms improved with medication. [R. 1463.] Although Plaintiff repeats Dr. Butt's opined limitations in an apparent challenge to the ALJ's assessment of Dr. Butt's opinions, he fails to challenge any of the ALJ's reasons for discounting those opinions. Regardless, the Court finds the ALJ cited several valid reasons for discounting Dr. Butt's opinion. The Court also finds the ALJ acted within his "substantial discretion" in crediting the reviewing doctors' opinions over the opinions from Dr. Butt. *Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (ALJ has "substantial discretion" in weighing conflicting medical opinions) (citing *Dixon v. Massanari*, 270 F.3d 1171 1178 (7th Cir. 2001)).

As to the impact of these opinions on the Plaintiff's mental RFC, the ALJ accommodated Plaintiff's mental limitations by restricting him to only simple and routine tasks, performed at a variable rate with no strict hourly-rate production requirements, no machine-pace or assembly line work, no tandem tasks, and no interaction with the public. [R. 1454.] Although Plaintiff himself indicated no problems with concentration, paying attention, or following instructions [*see* R. 368], he now argues the ALJ's RFC restrictions were insufficient to account for a moderate limitation in concentration, persistence, or pace. [Dkt. 13, pp. 11-14.] However, the opinions of Drs. Gilliland and Biscardi establish Plaintiff remained able to sustain simple tasks, despite moderate limitations in this broad functional domain. [*See* R. 89, 105.] The ALJ was entitled to rely on their opinions, and he did not err by including additional pace restrictions (variable rate work, no hourly quotas, and no machine pace or assembly line work) that further accommodated Plaintiff. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (upholding denial of benefits where ALJ accommodated Plaintiff beyond medical opinions based on additional record evidence).

Further, the Seventh Circuit has rejected the argument that there is an inherent inconsistency between a moderate rating in the broad area of concentration, persistence, or pace, and the ability to

9

perform simple, repetitive tasks at a consistent pace. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *see also Stephanie H. v. Comm'r*, 2021 WL 2986298, at *6-7 (N.D. Ill. July 14, 2021) (citing *Pavlicek* and rejecting categorial argument that limitations to simple, repetitive work cannot address moderate deficiencies of concentration, persistence and pace). The *Pavlicek* court noted the Agency's recently revised medical opinion regulations define a "moderate limitation" to mean "that functioning in that area is 'fair.'" *Pavlicek*, 994 F.3d at 783 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). And "'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Id.* Accordingly, the court held that a "moderate" limitation in this area is "consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* The Commissioner correctly notes that *Pavlicek* is consistent with the Seventh Circuit's recent jurisprudence affirming almost every ALJ decision where the claimant had a moderate rating in concentration, persistence, or pace and the RFC included evidence-based limitations to simple, repetitive tasks. *See, e.g., Peeters v. Saul*, 975 F.3d 639, 641-42 (7th Cir. 2020); *Simons v. Saul*, 817 F. App'x 227, 230-32 (7th Cir. 2020); *Morrison v. Saul*, 806 F. App'x 469, 473-74 (7th Cir. 2020); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020); *Urbanek v. Saul*, 796 F. App'x 910, 914-15 (7th Cir. 2019); *Pytlewski v. Saul*, 791 F. App'x 611, 615-17 (7th Cir. 2019); *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019); *Burmester*, 920 F.3d at 511-12. Thus, the Court can find no error in the ALJ's finding that Plaintiff can perform simple, repetitive tasks at a consistent pace, despite his moderate limitations in concentration, persistence, and pace.

In sum, Plaintiff has failed established any error in the ALJ's mental RFC determination; the Court will not overturn the ALJ's decision on this basis.

### 3.2. The ALJ Adequately Assessed Plaintiff's Subjective Statements

Next, Plaintiff complains the ALJ improperly assessed Plaintiff's subjective statements about his symptoms. The regulations set forth a two-step process for evaluating a plaintiff's statements about his impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable

impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the plaintiff's symptoms and determines how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929. In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Social Security Ruling ("SSR") l6-3p. If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id.* An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

First Plaintiff argues his ability to perform routine daily activities does not prove a capacity for full-time competitive work. [Dkt. 13, p. 14.] While it is true that daily activities do not automatically prove work capacity, the ALJ did not equate Plaintiff's activities with conclusive proof of his work capacity. Instead, the ALJ properly considered Plaintiff's activities when assessing whether the record supported the degree of limitation Plaintiff and his domestic partner alleged. [*See* R. 1452-54, 1464-65.] For example, not only did the ALJ note that from December 2017 through May 2021, Plaintiff denied difficulties with daily activities, but the ALJ also found Plaintiff's allegations of lying down most of the day inconsistent with the daily activities he was able to perform. [R. 1458, 1460.] It was "entirely permissible" for the ALJ to consider plaintiff's activities when weighing his subjective reports of limitations. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); 20 C.F.R. § 404.1529(c)(3)(i). The ALJ simply concluded these activities did not support the degree of limitation Plaintiff alleged.

Plaintiff also faults the ALJ for observing that his symptoms improved with medication and

11

conservative treatment. [Dkt. 13, pp. 14-15.] However, it was entirely proper for the ALJ to consider Plaintiff's medication and conservative course of treatment when weighing his allegations of disabling limitations. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The ALJ observed that Plaintiff received only conservative treatment, and that the record reflected this treatment was effective in relieving Plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(3)(v) (ALJ entitled to consider routine and conservative nature of claimant's treatment when assessing credibility); *see*, *also*, *e.g.*, *Frank J. v. Saul*, 2020 WL 6447928, at *9 (N.D. Ill. Nov. 3, 2020); *Adam B. v. Saul*, 2020 WL 1675462, at *7 (N.D. Ill. Apr. 6, 2020); *Vincent A. v. Berryhill*, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019).

In sum, Plaintiff has not demonstrated that the ALJ's assessment of his symptom allegations was patently wrong. The ALJ reasonably assessed Plaintiff's subjective assertions, and supported his reasoning in determining these assertions were not fully reliable. The Court will not overturn the ALJ's decision on this basis.

### 3.3. The ALJ Properly Relied on Uncontradicted VE Testimony

Lastly, Plaintiff argues the ALJ relied upon inherently unreliable testimony from the vocational expert. This is not so.

In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform. *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015); *Pelfrey v. Com'r of Soc. Sec.*, 2010 WL 909134, at *4 (S.D. Ohio Mar. 10, 2010); *see also*, *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities").

At the administrative hearing at issue here, the VE testified that an individual such as Plaintiff with the above RFC would be able to perform available work at the sedentary unskilled level, and offered examples of representative occupations that exist in significant numbers in the national economy that Plaintiff could perform. [R. 1497-98.] Those representative occupations consisted of

document preparer, addresser, and cutter and paster. [R 1498.] On cross-examination, Plaintiff's counsel asked the VE whether these jobs had been "automated out of existence." [R. 1500.] In response, the expert confirmed that "while there have been advances in technology[,] the basics of the position still remain." [*Id.*] As a specific example, the VE then went on to explain that the document preparer job now involved using scanners rather than microfilm, but the core role of the job remained preparing documents. [*Id.*] After this explanation, Plaintiff's counsel had no further questions for the VE. [*Id.*]

Now, however, despite declining to ask any follow-up questions at the hearing, Plaintiff asserts that the VE's testimony was "suspect" and the ALJ should not have relied on that testimony. [Dkt. 13, p. 15.] Plaintiff offers no factual basis for this argument. While Plaintiff's counsel did raise an objection, the ALJ adequately explained the reasoning behind his inclusion of certain representative jobs because they had not been automated out of existence.[5] The VE's testimony is uncontradicted (and, for what it's worth, that uncontradicted testimony does not strike the Court as inherently suspect). The Seventh Circuit has long held that an ALJ is entitled to rely on a vocational expert's testimony when that testimony is uncontradicted. *Liskowitz v. Astrue*, 559 F.3d 736, 746 (7th Cir. 2009); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). It was Plaintiff's burden to prove his disability claim, and because an attorney represented him at the administrative hearing, there is a presumption he made his best case to the ALJ. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Because Plaintiff failed to object to or counter the VE's testimony that the representative jobs identified still existed in the national economy, he has forfeited any claim of error.[6] *Brown v. Colvin*, 845 F.3d 247, 254

---

[5] This is in no way similar to the line of cases where a VE's job availability numbers were questioned and the VE was unable to substantiate the basis for those numbers. *See*, *e.g.*, *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019); *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002); *McKinnie v. Barnhart*, 368 F.3d 907 (7th Cir. 2004); *Brown v. Berryhill*, 2017 WL 5473466 (N.D. Ill. 2017); and *Kimberly N. v. Saul*, 2021 WL 1688173 (N.D. Ill. Apr. 29, 2021).

[6] Plaintiff claims he did object [dkt. 19, p. 4], but in reality, he asked the VE a question about whether the jobs were obsolete, and the answer he received was no (with an explanation as to why they were not). Plaintiff's counsel mounted no challenge to this answer, not even asking the VE how he came to this knowledge or his sources for the

(7th Cir. 2016) (a claimant forfeits a challenge to VE testimony by failing to object during the hearing). Thus, the ALJ was entitled to rely on the VE's uncontradicted testimony.

The Court will not overturn the ALJ's decision on this basis.

4. **Conclusion**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence. Defendant's motion for summary judgment [dkt. 18] is GRANTED; Plaintiff's motion for summary judgment [dkt. 13] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: July 11, 2023**

									Susan E. Cox,
									United States Magistrate Judge

---

same. There really was no colorable objection made here. Plaintiff's counsel chose to live with the answer given by the VE to his question, an answer which is not inherently suspect.